IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| IMPACT ENERGY RESOURCES, LLC, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> KEN SALAZAR, et al., <br><br> Defendants, | MEMORANDUM DECISION AND ORDER <br><br><br> Case No. 2:09-cv-435 <br> 2:09-cv-440* |

Before the court are two motions to intervene brought by the Southern Utah Wilderness Alliance and other environmental and historic preservation advocacy groups (collectively, "SUWA"). SUWA seeks to intervene in the consolidated plaintiffs' challenge of the Secretary of the Interior's February 2009 withdrawal of seventy-seven leases from consideration in the December 2008 oil and gas lease sale. Having fully considered the intervention applicant's and the plaintiffs'[1] written and oral argument, the court concludes that intervention is warranted.

BACKGROUND

On December 19, 2008, the United States Bureau of Land Management ("the BLM") held

---

\* Case No. 2:09-cv-440 was consolidated into Case No. 2:09-cv-435 on July 20, 2009.

[1] The federal defendants did not respond to SUWA's motions to intervene.

an oil and gas lease sale during which it accepted bids for around 130 leases on parcels of land located in Utah. Two days prior to the sale, SUWA sued the BLM in the United States District Court for the District of Columbia, challenging the agency's decision to offer leases on seventy-seven parcels of land ("the D.C. action"). The BLM moved forward with the sale but agreed to delay the issuance of leases until the administrative protests to the sale were resolved. Then on December 22, SUWA filed an application for a Temporary Restraining Order ("TRO") and Preliminary Injunction, seeking to prevent the BLM from issuing the seventy-seven contested oil and gas leases.

A short time later, the District Court for the District of Columbia issued the TRO enjoining the BLM from issuing the contested leases. *Southern Utah Wilderness Alliance v. Allred*, No. 08-2187, 2009 WL 765882, at *3 (D. D.C. Jan. 17, 2009). The district court ordered that the TRO would remain in effect until further order of the court. Id. at *5.

Following the issuance of the TRO, the Obama administration replaced the Bush administration and a new Secretary of the Interior, Ken Salazar, was appointed. He directed the BLM not to accept the high bids on the seventy-seven contested leases and withdrew the leases from further consideration. By this time the BLM had designated the high bidders for the parcels sold. The BLM had also accepted and cashed the high bidders' initial payments, bonus bids, and annual rentals for the first lease year of each lease sold.

In a media teleconference regarding his direction to the BLM, Secretary Salazar indicated that in his view the environmental review process for the lease sale was "not complete." Ken Salazar, U.S. Secretary of the Interior, Teleconference about Restoring Balance in Controversial

2

Last-minute Oil and Gas Lease near Utah Nat'l Parks (Feb. 4, 2009) (transcript available at http://www.doi.gov/news/audio/podcasts/transcripts/02042009.html). The Secretary also referred to the TRO imposed by the District Court for the District of Columbia. Id. In his memorandum directing the Utah BLM state director to withdraw the seventy-seven leases, Secretary Salazar further explained that following "considerable controversy surrounding this lease sale, including questions about the degree of coordination between the BLM and other Federal agencies, . . . and the adequacy of the environmental review analysis performed in connection with certain parcels . . ." further review was required. Memorandum from Secretary Ken Salazar to Selma Sierra, State Director Bureau of Land Management-Utah (Feb. 6, 2009).

Several months later, on May 13, 2009, plaintiffs Impact Energy Resources, Peak Royalty Holdings, and Questar Exploration and Production filed suit in this court (collectively, "the energy companies"). Plaintiffs Uintah County, Carbon County, and Duchesne County filed suit on the same day (collectively, "the counties"). Both the energy companies and the counties challenge the federal defendants' withdrawal of the lease bids and lease parcels, arguing that the defendants' decision violated the Mineral Leasing Act and therefore was in excess of the Secretary of the Interior's statutory jurisdiction and that the decision was arbitrary, capricious, and an abuse of discretion in violation of the Administrative Procedures Act. As a remedy, the consolidated plaintiffs seek an order declaring that the defendants lacked authority to withdraw the lease parcels. They also seek an order directing the BLM to reinstate the lease bids at issue and to issue the leases to the appropriate successful bidders.

SUWA quickly moved to intervene in both cases arguing that its interest in the public

lands at issue and the validity of the lease withdrawal will be impaired if it is not allowed to intervene in this litigation. SUWA argues that the federal defendants will not adequately protect SUWA's interest. SUWA seeks both as-of-right and permissive intervention. The cases have now been consolidated and, therefore, the court considers the separate motions to intervene and the plaintiffs' arguments in opposition together.

ANALYSIS

Federal Rule of Civil Procedure 24(a)(2) permits intervention of a third party when an applicant timely

>  (1) "claims an interest relating to the property or transaction which is the subject of the action, " and
>
>  (2) "the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest," unless
>
>  (3) "the applicant's interest is adequately represented by existing parties."

"[T]he factors mentioned in the rule are intended to capture the circumstances in which the practical effect on the prospective intervenor justifies its participation in the litigation." *San Juan County v. United States*, 503 F.3d 1163, 1195 (10th Cir. 2007). Determining when intervention is justified "requires courts to exercise judgment based on the circumstances of the case." *Id.* at 1199. This exercise of judgment allows the court to impose "appropriate conditions or restrictions" in order to ensure litigation proceedings are conducted efficiently. *Id.* at 1189

(quoting Fed. R. Civ. P. 24 advisory committee's notes (1966)).

In the consolidated cases before the court, SUWA made a timely application for intervention; therefore, the court's analysis will focus on (1) whether SUWA has an impaired interest, and if so, (2) whether its interest is adequately represented by the federal government defendant.

## I. IMPAIRED INTEREST

To intervene as-of-right, an applicant must show "that impairment of its substantial legal interest is possible if intervention is denied." *WildEarth Guardians*, 573 F.3d 992, 995 (10th Cir. 2009). This inquiry is "highly fact-specific," *San Juan County v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007) and serves "primarily [as] a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* at 1195 (quoting *Coalition of Ariz./N.M. Counties v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996). In measuring the applicant's interest, the court focuses not on "the particular issue before the court but . . . instead . . . the interest the intervenor claims is *related to the property that is the subject of the action*." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1252 (10th Cir. 2001).

In the consolidated cases at issue, SUWA argues that its interest in the environmental protection of the parcels of land on which the oil and gas leases are located may be impaired by the outcome of the consolidated cases because the plaintiffs' lawsuits seek a declaration that the BLM be required to issue the withdrawn leases. Such an order, they argue, will lead to oil and gas development on the public lands their members frequently visit and seek to protect.

Additionally, SUWA argues that the plaintiffs' claims are intertwined with the adequacy of the Vernal, Price, and Moab resource management plans and environmental impact statements, which is an issue that SUWA and the Secretary of Interior are currently litigating in the D.C. District Court. In fact, SUWA suggests that it was their lawsuit that spurred the Secretary to withdraw the leases.

To the contrary, the plaintiffs argue that SUWA's interest in the public lands is not related to the issue presented by their case–whether the Secretary of Interior had authority to withdraw the leases. Moreover, the plaintiffs argue that SUWA's interest in preventing oil and gas development on the public lands will not be impaired by the outcome of their cases. The plaintiffs argue that they are only seeking reinstatement as the high bidders. They acknowledge that their ultimate objective is the issuance of the leases, but contend that that issue is not the subject of these Utah cases, but will instead ultimately be decided in the D.C. action.

Reviewing all of the relevant and somewhat complicated circumstances, the court concludes that impairment of SUWA's legal interest is possible if intervention is denied. The Tenth Circuit liberally applies the intervention standard in public law cases, which has resulted in "broadly inclusive public law litigation." *San Juan County*, 503 F.3d at 1210 (McConnell, J., concurring). In comparison, cases involving private issues such as title to real property and other real property issues rarely allow for intervention of third parties. *See Kane County v. United States*, No. 2:08-cv-315, 2009 WL 959804 (D. Utah Apr. 6, 2009); *Coalition of Arizona/New Mexico Counties for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 843 (10th Cir. 1996) (distinguishing intervention in private actions from intervention in administrative actions); *San*

*Juan County*, 503 F.3d at 1210 (McConnell, J., concurring) (distinguishing between cases involving administration of public lands and real property disputes). The energy companies and counties argue that this case is analogous to *Kane County* because the issue before the court is narrow and does not involve public lands issues but instead the Secretary of Interior's authority to take certain actions. Though superficially persuasive, this argument does not carry the day. It is true that the issue before the court is narrow, but it originates from a decision to issue and then withdraw oil and gas leases on BLM property, which is clearly an issue of public land administration. Unlike *Kane County*, the resolution of this case implicates public land decisions and the environmental and historic preservation reviews underlying those decisions. With respect to the public lands and the decisions to issue oil and gas leases on these lands, SUWA has been a determined advocate and has been involved in the decisions relating to the administration of the public lands, including initiation of the D.C. action to challenge the Secretary's decision to issue the leases. This involvement satisfies the Tenth Circuit's liberal application of Rule 24(a)(2)'s interest requirement.

Additionally, the energy companies and counties argue that they seek only the reinstatement of their bids and, therefore, any interest SUWA has will not be impaired by the outcome of the case. This argument, however, ignores the consolidated parties' own Complaints, which both argue that the defendants in this case "must be instructed to proceed to issue the leases." Counties' Compl. ¶ 8; Energy Companies' Compl. ¶ 7. In supporting this request, the consolidated plaintiffs argue that "the BLM complied with all applicable statutes, regulations, rules, procedures, guidelines . . ." when deciding to issue the oil and gas leases. Energy

7

Companies' Compl. ¶5. As demonstrated above, SUWA has an interest in the public lands at issue; more specifically, SUWA has a substantial interest in validity of the leases granted for these public lands. If the court were to agree with the consolidated plaintiffs and find that the BLM followed all legal requirements and therefore the Secretary's decision was arbitrary, SUWA's interest would be impaired. The court concludes that SUWA has met its "minimal burden" to establish a possible impairment. *See Utah Ass'n of Counties*, 255 F.3d at 1253 (quoting *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999)).

## II. ADEQUATE REPRESENTATION

Once possible impairment of a substantial interest is established, intervention is warranted unless that interest is "adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). "Representation is adequate when the objective of the applicant for intervention is identical to that of one of the parties." *Coalition of Ariz. and N.M. Counties v. Dep't of Interior*, 100 F.3d 837, 845 (10th Cir. 1996). However, representation is not adequate if the intervention applicant can show a "possibility of divergence of interest," and the divergence "need not be great." *Id.*

The consolidated plaintiffs argue that SUWA's interests are adequately protected by the federal defendants because SUWA and the federal defendants share "identical interest[s] and motivation[s]." Energy Companies' Memo in Opp. 9. The consolidated plaintiffs contend that both SUWA and the federal defendants seek to defend the Secretary's authority to withdraw the leases.

In contrast, SUWA argues that the federal defendants' obligation to represent broad-ranging public interests may interfere with its ability to adequately represent SUWA's

preservation-focused interests. Additionally, SUWA argues that their interests and those of the federal government are not aligned because they are on opposite sides of litigation regarding the adequacy of the environmental impact statements and regional management plans. According to SUWA, the federal defendants' decision to withdraw the leases was spurred by the TRO they obtained in the D.C. action and in that action the federal defendants are still defending the adequacy of their analyses. SUWA speculates that the federal defendants may advocate less strenuously in these Utah cases that the analyses were sufficient when addressing whether or not the Secretary's decision to withdraw the leases was arbitrary.

Here, as the consolidated plaintiffs argue, the issue in this case is narrow and SUWA and the federal defendants seem to share the same objective, that is, to uphold the authority of the Secretary to withdraw the leases. Nevertheless, SUWA has presented sufficient evidence to suggest that the federal government, due to a conflicting position in another case, may not defend its authority with the same zeal as SUWA would, at least on the issue of whether the studies, analyses, and documents underlying the lease sale were valid. This issue will most likely be disputed by the parties in their litigation over whether the federal defendants violated the Administrative Procedures Act. Nor can the court ignore that, in part, this litigation proceeded from SUWA's advocacy in bringing the D.C. action, and that the issue of whether the federal defendants acted arbitrarily is intertwined with that case. Therefore, under these uniquely interrelated circumstances, the court finds SUWA's interests may be inadequately represented.

Finding that SUWA has established the possible impairment of a substantial interest and a divergence of interest with the federal defendants, the court GRANTS SUWA's motions to

intervene. Because SUWA is entitled to intervention as-of-right as expressed herein, the court does not address SUWA's request for permissive intervention.

IT IS SO ORDERED.

Dated this 17th day of February, 2010.

BY THE COURT

_____
Dee Benson
U.S. District Court Judge